1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ANDRE RENEE SCOTT, | Case No.  1:20-cv-00317-JLT-HBK (PC) |
| 12            Plaintiff, | FINDINGS AND RECOMMENDATIONS TO |
| 13       v. | GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENY |
| 14  CHARLES EDWARDS and T. YOUNG, | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| 15            Defendants. | |
| 16 | FOURTEEN-DAY OBJECTION PERIOD |
| 17 | (Doc. Nos.  37, 46) |

18

19           Pending before the Court are Defendants' and Plaintiff's respective Motions for Summary

20   Judgment.  (Doc. Nos. 37, 46).  For the reasons discussed below, the undersigned recommends

21   the district court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion

22   for Summary Judgment because there is no genuine dispute of material facts as to whether

23   Defendants Young and Edwards acted with deliberate indifference to Plaintiff's serious medical

24   needs.

                              **I.       BACKGROUND**

25       **A.  Procedural History**

26           Plaintiff Andree Renee Scott is a state prisoner proceeding pro se and *in forma pauperis* in

27   this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Charles Edwards and T.

28   Young.  Plaintiff proceeds on his Second Amended Complaint, as screened.  (Doc. Nos. 28, 29).

1    On February 13, 2024, Defendants filed the instant Motion for Summary Judgment.  (Doc.

2    No. 37, "Defendants' MSJ").  After being granted three extensions of time (Doc. Nos. 45, 51, 53),

3    on October 21, 2024, Plaintiff filed an Opposition to Defendants' MSJ (Doc. No. 59).  On

4    October 30, 2024, Defendants filed a Reply.  (Doc. No. 61).

5    On April 24, 2024, Plaintiff filed his own Motion for Summary Judgment.  (Doc. No. 46).

6    On May 7, 2024, Defendants filed an Opposition.  (Doc. No. 49).  Plaintiff elected not to file a

7    Reply.  *See* docket.

8    **B.  Defendants' MSJ**

9    Supporting their MSJ, Defendants submit: (1) a statement of undisputed material facts

10   (Doc No. 37-1); (2) the sworn declaration of B. Archibald attaching Exhibits A-I and attesting to

11   the authenticity of the Exhibits (Doc. No. 37-3); (3) the sworn declaration of Defendant C.

12   Edwards attaching Exhibits A-B and attesting to the authenticity of the Exhibits (Doc. No. 37-4);

13   and (4) the sworn declaration of Defendant T. Young attaching Exhibits A-G and attesting to the

14   authenticity of the Exhibits (Doc. No. 37-5).

15   "In a summary judgment motion, documents authenticated through personal knowledge

16   must be 'attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the

17   affiant must be a person through whom the exhibits could be admitted into evidence.'"  *Orr v.*

18   *Bank of Am., NT & SA*, 285 F.3d 764, 773–74 (9th Cir. 2002) quoting *Canada v. Blain's*

19   *Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987) (citation omitted).  "However, a proper

20   foundation need not be established through personal knowledge but can rest on any manner

21   permitted by Federal Rule of Evidence 901(b) or 902."  *Orr*, 285 F.3d at 774; *see also*

22   Fed.R.Evid. 901(b) (providing ten approaches to authentication); Fed.R.Evid. 902 (self-

23   authenticating documents need no extrinsic foundation).

24   Here, based on Archibald's role as the Chief Dentist for Policy and Risk Management at

25   CCHCS, through which he is familiar with CDCR dental records and Plaintiff's records, he could

26   authenticate the dental records attached to his declaration as a "witness with knowledge" (per

27   Fed. R. Evid. 901(b)(1)).  Defendants Young and Edwards could likewise authenticate the

28   documents attached to their declarations based on their personal knowledge from treating Plaintiff

and reviewing his records in response to his health care grievances.  Thus, the undersigned accepts the Exhibits as true and correct copies of the documents as represented in each of the sworn declarations.

Plaintiff's Opposition (Doc. No. 59) includes "Undisputed Facts" (*id*. at 2-7), a Memorandum of Points and Authorities (*id*. at 8-33), and Plaintiff's Declaration in Opposition to Declaration[s] of B. Archibald[,] T. Young and C. Edwards (*id*. at 34-36), as well as 130 pages of exhibits consisting of the parties' prior filings and Court orders in this case (*id*. at 38-169).  The Opposition does not comply with the requirement in Local Rule 260(b) that Plaintiff "reproduce the itemized facts in [the moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  L.R. 260(b) (E.D. Cal. 2023).  Rather, to the extent discernible, Plaintiff's Opposition appears to dispute four of the averments in Defendants' Statement of Undisputed Material Facts.  (*See* Doc. No. 59 at 2-7).  Plaintiff's Opposition argues generally that Defendants' MSJ should be denied because Defendants admit Plaintiff had an apical abscess and a broken file tip in tooth #9, but they did not refer him to outside dental care, raising a triable issue as to whether they violated his Eighth Amendment rights.  (*See generally id*.).

In their Reply, Defendants largely reiterate the arguments set forth in their MSJ.  In response to Plaintiff's claim that they ignored a serious infection in his tooth, they assert the undisputed evidence shows that Plaintiff never had a serious infection on tooth #9, only a chronic apical abscess which occurs gradually with little or no discomfort.  (Doc. No. 62 at 2).  Moreover, Defendants offered Plaintiff an appropriate course of treatment, which was to extract tooth #9, which Plaintiff repeatedly declined and insisted on being sent for outside dental care, which was unnecessary.  (*Id*.).

**C. Plaintiff's MSJ**

Supporting his MSJ, Plaintiff submits: (1) a memorandum of points and authorities (Doc No. 46 at 8-12); (2) Plaintiff's declaration (*id*. at 13-15); (3) Plaintiff's Separate Statement of

Undisputed Facts (*id*. at 16-22); and (5) various exhibits including copies of Defendants' responses to Plaintiff's discovery requests; Plaintiff's dental records; Defendants' declarations in support of their MSJ; the Court's screening order on Plaintiff's SAC; and Plaintiff's SAC (*id*. at 23-82).

Defendants' Opposition includes a Memorandum of Points and Authorities (Doc. No. 49) and an Opposition to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 49-1). Largely mirroring their arguments in their own MSJ, Defendants' Opposition contends that the undisputed facts show that Plaintiff never had a severe infection in tooth #9, that Defendants offered Plaintiff the appropriate course of treatment for the problems with tooth #9, which was extraction, and that referral to outside dental care was unnecessary and unreasonable. (*See generally* Doc. No. 49, 49-1). Moreover, they argue that any claim regarding a broken file tip left in Plaintiff's tooth #9 is barred by the statute of limitations. (Doc. No. 49 at 10-11). Plaintiff did not file a reply. *See* docket.

In the interest of judicial economy, because Defendants' and Plaintiff's respective MSJs involve identical legal issues and factual allegations, the Court analyzes the two motions together.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

4

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Ninth Circuit has "held consistently that courts should construe liberally motion

1    papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules

2    strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611

3    F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still

4    must "identify or submit some competent evidence" to support their claims.  *Soto*, 882 F.3d at

5    872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

6    if based on personal knowledge and specific facts admissible in evidence.  *Lopez v. Smith*, 203

7    F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations

8    unsupported by specific facts, will not be sufficient to avoid summary judgment.  *Arpin v. Santa*

9    *Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff

10   fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to

11   have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

12       The undersigned has carefully reviewed and considered all arguments, points and

13   authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

14   objections, and other papers filed by the parties.  The omission to an argument, document, paper,

15   or objection is not to be construed that the undersigned did not consider the argument, document,

16   paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

17   deemed admissible, material, and appropriate for purposes of issuing these Findings and

18   Recommendations.

19       **B.  Eighth Amendment Medical Deliberate Indifference**

20       The Constitution requires prison officials to provide inmates with reasonably adequate

21   medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To hold an official liable for violating

22   this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong

23   and subjective prong.  First, the inmate must suffer from a serious medical need (the objective

24   prong); and second the official must be deliberately indifferent to the inmate's serious medical

25   need (the subjective prong).  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in*

26   *part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v.*

27   *Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).  A medical need is "serious" if the failure to treat

28   "could result in further significant injury or the unnecessary and wanton infliction of pain."  *Jett*

*v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).  The "second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Id.* (internal citations omitted).  This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner—generally does not amount to deliberate indifference.  *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").  To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

////

### C. Statute of Limitations

Because section 1983 contains no specific statute of limitation, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). California's statute of limitations for personal injury actions is two years. *Jones*, 393 F.3d at 927 (citing Cal. Code Civ. Proc. § 335.1). The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989)); *Jones*, 393 F.3d at 927 (noting that in actions where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law). Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for two years. Cal. Code Civ. Proc. § 352.1(a); *Johnson v. California*, 207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005). Accordingly, the effective statute of limitations for most California prisoners is four years (two years statutory tolling plus two years statute of limitations).

Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *Hardin*, 490 U.S. at 543–44 (federal law governs when a § 1983 cause of action accrues). "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391. Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

### III.  ANALYSIS

### A.  Allegations in Plaintiff's Operative Complaint

The following allegations are set forth in the Second Amended Complaint. On May 11, 2018, while Plaintiff was incarcerated at California Substance Abuse Treatment Facility and State Prison ("SATF"), Defendant Young conducted an oral examination of Plaintiff and "discovered Scott's gums bleeding, swollen and sensitive to touch. Young also discovered Scott's #9 tooth

turning brown . . . [and] informed Scott that X-Rays showed an abcess [sic] located in the gums above his #9 tooth." (Doc. No. 28 at 6 ¶¶ 9-10). Rather than provide any treatment to Plaintiff, Young told Scott that he may have to pay a $5 co-pay for further dental care. (*Id*. at 6-7 ¶¶ 12-13).

On August 10, 2018, Young saw Plaintiff again and stated that his tooth #9 looked the same and that he had a "life-threatening abcess [sic] located misiofacially and underneath the gum tissue and that Scott's gums were bleeding, swollen" and that tooth #9 was turning brown. (*Id*. at 7 ¶ 15). Young denied Plaintiff's request for off-site dental or medical treatment and told him to submit a CDCR 7362 Health Care Services Request Form if he requested further dental treatment. (*Id*.).

On September 20, 2018, after Scott requested a second opinion on Young's diagnosis, Plaintiff was seen by Defendant Edwards, Young's supervisor. (*Id*. ¶¶ 16-17). Edwards conducted an oral examination of Plaintiff and "found Scott suffering from a life threatening [sic] abcess, a spreading bacterial infection located misiofacially and underneath the soft tissue of Scott's bleeding, swollen gums, and discolorization [sic] of Scott's #9 tooth." (*Id*. ¶ 17). Edwards also informed Plaintiff that past X-rays showed a broken file tip lodged inside tooth #9. (*Id*. ¶ 18). Edwards told Plaintiff that he was not qualified to perform surgery to remove the broken file tip. (*Id*.). Edwards advised Plaintiff that failure to treat the abscess "increases the likelihood of irreparable harm, including but not limited to premature death" but denied Plaintiff access to off-site medical or dental care. (*Id*. at 8 ¶ 19). Plaintiff submitted health care grievances requesting "access to medical personnel qualified to properly assess and provide appropriate treatment to his serious medical needs in compliance with [Title 15], specifically to offsite health care treatment [and] for treatment of a dental emergency" but his requests were denied. (*Id*. at 8-11 ¶¶ 21-31).

As relief, Plaintiff seeks $2 million in punitive damages, "access to medical personnel qualified to properly assess and provide treatment for [his] serious medical needs" and a trial by jury. (*Id*. at 4).

*////*

9

**D. Material Facts**

**1. Undisputed Material Facts**

In support of their respective MSJs, Defendants and Plaintiff each submit a Separate Statement of Undisputed Facts.[1]  (Doc. No. 37-1; Doc. No. 46 at 16-22).  Defendants submitted an Opposition to Plaintiff's Separate Statement of Material Facts ("SSMF").  (Doc. No. 49-1).  In his Opposition to Defendants' MSJ, Plaintiff included a "Reply In Opposition to Defendants' Separate Statement of Undisputed (Material) Facts and Reply to Defendants' Opposition to Plaintiff's Separate Statement of Undisputed (Material) Facts."  (*See* Doc. No. 59 at 2-7).  Each listed fact cites to either a declaration, Plaintiff's operative Second Amended Complaint, or Defendants' discovery responses.  (*See generally* Doc. Nos. 37-1, 46 at 16-22, 49, 59).

Having reviewed the record, the undersigned finds the following facts to be material and undisputed, unless otherwise noted.

- A root canal of Plaintiff's tooth #9 was unsuccessfully attempted in 2007 while he was incarcerated at Kern Valley State Prison, and resulted in a separated instrument, an endodontic file, being retained in Plaintiff's tooth.  X-rays show that pulp chamber/canal obliteration was present at the time of that root canal attempt due to previous trauma described by Plaintiff.  (Doc. No. 37-3 at 2-3 ¶¶ 4, 5, 7)

- Before the root canal procedure, Scott was informed of the possibility that an instrument could be retained in the tooth.  Specifically, on June 28, 2007, Scott signed a CDCR form 7424, entitled "Informed Consent for Root Canal Treatment."  A portion of that form provides that the signer "understand[s] that occasionally a root canal instrument may break off in a root canal that is twisted, curved, or blocked with calcium deposit. Depending on its location, the fragment may be retrieved or it may be necessary to seal it inside the root canal . . . ."  (*Id.* ¶¶ 5-6; *id.* at 7-9).

---

[1] Both Plaintiff's SSMF and his Reply to Defendants' SSMF focus on two facts, which Defendants do not dispute: (1) that on November 27, 2018 Defendant Edwards diagnosed Plaintiff with a periapical abscess, and (2) that Defendants never referred Plaintiff for outside dental treatment.  (*See generally* Doc. No. 46 at 16-22; Doc. No. 59 at 2-7).  Plaintiff's Reply to Defendants' SSMF otherwise largely reasserts the same facts alleged in his Second Amended Complaint.  (*See* Doc. No. 59 at 2-7).

- An October 18, 2007 clinic note by Dr. Garcia of Kern Valley State Prison stated the canal was calcified and the tip of an endodontic file was broken in Scott's tooth.  A December 21, 2007 clinic note by Dr. Garcia stated she had restored the endodontic access and the "situation [had been] explained to" Scott.  (Doc. No. 37-3 at 3 ¶ 7).

- Defendant Young first examined inmate Scott at SATF on May 11, 2018.  During this encounter, Scott pointed to tooth #9 and stated that his gum felt "like it [was] red and swollen."  He also reported that the tooth had been hit in some manner when he was a child.  Young observed that tooth #9 was discolored and had a cavity on the root area.  Accordingly, Young informed Scott of the cavity, and stated that she would fill the cavity during his next visit.  (Doc. No. 37-5 at 1 ¶ 3, *id*. at 4-14).

- On August 10, 2018, Young took X-rays of tooth #9, and the cavity in the tooth was filled with glass ionomer.  Young proposed extracting tooth #9, but Scott refused the recommended treatment and signed a refusal form.  During the appointment, Young discussed the risks, alternatives, benefits, and consequences of refusing the recommended extraction, including, but not limited to, worsening of his dental condition, increased pain, infection spreading to other areas, swelling, and death.  Young also prescribed antibiotics to Scott during this visit.  (Doc. No. 37-5 at 1 ¶ 4; *id*. at 15-22).

- Defendant Young subsequently sought a second opinion from her supervisor, Defendant Edwards, regarding the prognosis and possible retreatment of Plaintiff's tooth #9.  (Doc. No. 37-4 at 2 ¶ 4; Doc. No. 46 at 25)[2].

- Prior to Defendant Edwards examining Plaintiff, Scott had stated he wanted an outside specialist to examine tooth #9.  (Doc. No. 37-4 at 2-3 ¶ 6).

- On September 20, 2018, Defendant Edwards examined Plaintiff.  Edwards found no purulent discharge, draining sinus tract, or swelling to indicate that tooth #9 involved an active bacterial infection or abscess.  There was also no bleeding, swelling, or debilitating

---

[2] The Court notes a possible discrepancy in the record as to whether Defendant Edwards' second opinion was prompted by Plaintiff's filing of a CDCR 7362 Health Care Request Form or Defendant Young's request.  However, the distinction is not material to any claim or defense in this matter.

11

pain in connection with tooth #9 during the September 2018 exam.  Scott refused to allow Edwards to touch tooth #9 during this examination.  (Doc. No. 37-3 at 2 ¶ 4; Doc. No. 37-4 at 2 ¶¶ 5-6).

- Young's next interaction with inmate Scott occurred on November 5, 2018, when Scott came in for face-to-face triage.  He stated that the gums in the lower right portion of his mouth were swollen, and that he needed "strong antibiotics to kill [the swelling]."  After two X-rays were taken which showed tooth #31 with apical pathology, Young recommended that tooth #31 be extracted.  Young extracted Scott's tooth #31 on December 6, 2018, and she conducted a post-operation check on the extracted tooth on December 11, 2018.  (Doc. No. 37-3 at 2-3 ¶¶ 5-6; *id.* at 23-31).

- On November 27, 2018, Defendant Edwards examined Plaintiff and noted "chronic apical abscess, broken endo file, non obturated canal, poor prognosis.  All tooth #9."  (Doc. No. 46 at 27).  A chronic apical abscess occurs gradually with little or no discomfort.  (Doc. No. 49-1 at 4).  Plaintiff's dental records reflect that each time he was examined by Defendants at SATF, there was no acute infection associated with tooth #9.[3]  (Doc. No. 37-3 at 2 ¶ 4; Doc. No. 37-4 at 2 ¶¶ 5-6).

- Young performed a comprehensive exam on Scott on January 10, 2019.  During this visit, Scott pointed to tooth #9 and stated that it felt "a little loose."  After X-rays were taken, Young discussed her clinical findings, including Scott's September 2018 conversation with Dr. Edwards, who had offered to remove the broken file on tooth #9.  Scott stated that he did not want any of the SATF dentists to touch tooth #9.  (*Id.*).  Plaintiff also refused Defendants' offers to extract tooth #9 on November 6, 2019, February 6, 2020, and April 19, 2022. (Doc. No. 37-5 at 3 ¶ 7; *id.* at 32-34; Doc. No. 37-3 at 3 ¶ 8; *id.* at 18-28).

---

[3] Though somewhat obscured by dental jargon, Defendants' briefing appears to assert a significant distinction between a chronic apical abscess, which is a gradual and less severe oral infection, and a regular abscess, which represents a severe infection.

- On February 15, 2019, Plaintiff's request for an off-site specialist was presented to the Dental Authorization Review Committee ("DAR"). In response, the DAR unanimously agreed that "tooth #9 has poor prognosis and is determined non-restorable. [The committee] recommended extraction [of] tooth #9 by yard dentist with replacement of tooth by Partial Upper Denture (PUD)." (Doc. No. 37-4 at 3 ¶ 7; *id.* at 6-7).

- On March 11, 2019, Defendant Young informed Plaintiff that the DAR Committee disapproved Plaintiff's request to be referred to an outside specialist for treatment of tooth #9. (Doc. No. 37-5 at 3 ¶ 8).

- California Correctional Health Care Services' Chief Dentist for Policy and Risk Management opined that, when Defendants encountered Scott in 2018, the appropriate course of care for tooth #9 was extraction rather than endodontic treatment. The Chief Dentist opined that outside treatment for Plaintiff's dental issues was not medically necessary. (Doc. No. 37-3 at 2-3 ¶¶ 3, 8).

**D. Plaintiff's Claim Based on Failed 2007 Root Canal**

The Court turns first to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs because they failed to treat the endodontic file tip lodged in Plaintiff's tooth #9 after his unsuccessful 2007 root canal or to refer him to outside providers who could do so. Defendants contend that Plaintiff's claim is barred by the statute of limitations because the claim accrued at the latest in December 2007, when Plaintiff was advised by Dr. Garcia that the file tip had broken in his tooth. (Doc. No. 37 at 8-9). Thus, Defendants argue that Plaintiff was required to file suit no later than December 2011 for this claim to be timely. (*Id.*). The Court agrees.

To the extent Plaintiff suffered an injury from a file tip breaking off in tooth #9, his claim under section 1983 accrued when he learned of the injury. *See Wallace*, 549 U.S. at 391. The undisputed facts demonstrate that Plaintiff learned of the broken file tip in December 2007 from Dr. Garcia. (Doc. No. 37-3 at 3 ¶ 7). Even with the benefit of two years of tolling pursuant to the operation of Cal. Code Civ. Proc. § 352.1(a), Plaintiff's claim would have been due no later than December 2011. Plaintiff's Complaint in this action was not filed constructively filed until

1    February 21, 2020,[4] thus more than 8 years after the statute of limitations expired.  Accordingly,

2    Plaintiff's claim as to the broken file tip is time barred.

3        **E. The Undisputed Facts Show Neither Defendant Acted with Deliberate**

4        **Indifference to Plaintiff's Tooth #9**

5        Turning to Plaintiff's primary Eighth Amendment claim, the undersigned must first

6    consider whether Defendants, as the moving parties, have met their initial burden of showing

7    *prima facie* entitlement to summary judgment on the issue of Plaintiff's medical deliberate

8    indifference claim.  *Celotex Corp.*, 477 U.S at 323.  The *prima facie* elements of medical

9    deliberate indifference are (1) a "serious medical need[,] [where] failure to treat a prisoner's

10    condition could result in further significant injury or the unnecessary and wanton infliction of

11    pain" and (2) the defendant's "response to the need was deliberately indifferent."  *Wilhelm*, 680

12    F.3d at 1122 (internal quotation marks and citation omitted).  The second prong is satisfied by

13    showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need

14    and (b) harm caused by the indifference."  *Jett*, 439 F.3d at 1096 (internal citations omitted).

15        **1.  Serious Medical Need**

16        Here, Plaintiff's SAC alleges he suffered a serious medical need due to multiple issues

17    with his dental health concerning tooth #9.  (*See generally* Doc. No. 28).  While the parties

18    dispute the precise severity and specific details of Plaintiff's dental condition, Defendants

19    acknowledge that "Scott's dental issues constituted a serious medical issue."  (Doc. No. 37 at 10).

20    Indeed, when Defendant Young examined Plaintiff on August 10, 2018, she advised Plaintiff that

21    the risks of not extracting tooth #9 potentially included "worsening of the dental condition,

22    increased pain, infections spreading to other areas, swelling, and death . . ."  (Doc. No. 37-5 at 2

23    ¶ 4).  Defendant Edwards noted in his progress notes from his November 27, 2018 examination of

24    Plaintiff that the issues with Plaintiff's tooth #9 required "urgent care-30 calendar days from the

25    date of diagnosis."  (Doc. No. 46 at 28).  Thus, the Court finds it undisputed that Plaintiff meets

26

27    _____

[4] Although docketed on March 2, 2020, the Court applies the mailbox rule and deems the pleading filed on the date Plaintiff certifies he signed it and presumably delivered to correctional officials for mailing—here February 21, 2020.  (Doc. No. 1 at 8).  *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (addressing

28    mailbox rule).

1    the objective prong of the deliberate medical indifference analysis.

2                **2. Deliberate Indifference**

3          However, the Court finds that Plaintiff does not meet the second prong of medical

4    deliberate indifference—failure to respond to a prisoner's serious medical need—as to either

5    Defendant. *Jett*, 439 F.3d at 1096. A defendant "cannot be said to have been indifferent" to an

6    inmate's serious medical need if they took steps to address it. *DeGeorge v. Mindoro*, 2019 WL

7    2123590, at *7 (N.D. Cal. May 15, 2019). Here, Defendants indisputably took steps to address

8    Plaintiff's serious medical need, and Plaintiff's allegations amount at most to a difference of

9    medical opinion.

10                1. <u>Defendant Young</u>

11          Defendant Young saw Plaintiff four times between May 2018 and January 2019. (*See*

12    *generally* Doc. No. 37-5). The undisputed facts establish that Dr. Young never disregarded

13    Plaintiff's medical concerns, failed to examine him, or neglected to propose medically reasonable

14    treatment for his dental issues during this time. Instead, Young listened to Plaintiff's concerns,

15    performed multiple oral examinations, took X-rays of Plaintiff's teeth on three occasions to better

16    evaluate the issues, and advised Plaintiff as to her recommended course of treatment. (*Id*.). With

17    respect to tooth #9, Young initially filled a cavity on the tooth, but later told Plaintiff that given

18    the presence of discoloration, a calcified canal, and apical infection that he should have the tooth

19    extracted, a procedure which she offered to perform. (*Id*. at 2 ¶ 4). Young advised Plaintiff of

20    the risks, alternatives, benefits, and consequences of refusing the extraction, and Plaintiff declined

21    the procedure. (*Id*.). Young also prescribed antibiotics for Plaintiff to treat his infection. (*Id*.).

22    At a subsequent visit on January 10, 2019, Young again recommended extraction of tooth #9, but

23    Plaintiff again refused and instead requested an outside specialist because he did not want to lose

24    the tooth. (*Id*. at 3 ¶7).

25          At most, accepting Plaintiff's version of the facts as true, Plaintiff alleges a difference of

26    medical opinion, which does not amount to cruel and unusual punishment under the Eighth

27    Amendment. *See Garcia v. Katukota*, 362 F. App'x 622, 622 (9th Cir. 2010) (evidence of

28    medical misdiagnosis and difference of medical opinion are insufficient to show deliberate

indifference).  An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference.  *Estelle*, 429 U.S. at 107.  To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health.  *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).  Here, the only record evidence supports the finding that the proposed extraction of Plaintiff's tooth was the correct course of treatment and that referral to an outside specialist was not warranted.  (Doc. No. 37-3 at 2-3 ¶¶ 3, 8).

To the extent Plaintiff premises his Eighth Amendment claim on Young's failure to refer him to an outside medical provider, this also fails.  A prison inmate has no independent constitutional right to outside medical care beyond that provided by the prison staff.  *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) (citing *Estelle*, 429 U.S. at 103-04); *King v. Kuersten*, 2023 WL 2841073, at *2 (E.D. Cal. Apr. 7, 2023).  Only if the prison's medical staff is not competent to examine, diagnose, and treat an inmate's medical problems must they "refer [the inmate] to others who can."  *Stocker v. Nevada*, 2024 WL 4112299, at *8 (D. Nev. Aug. 12, 2024) (internal citations omitted).  Here, the undisputed facts show that Defendants Young and Edwards were both competent to diagnose and treat Plaintiff's apical infection, thus Plaintiff had no constitutional right to be referred to an outside medical specialist.  Ultimately, the undisputed facts establish that Plaintiff's refusal to accept reasonable medical treatment, rather than any deliberate indifference by Defendant Young, was the proximate cause of Plaintiff's injury.  Thus, Defendant Young is entitled to summary judgment on Plaintiff's Eighth Amendment

### 2.  Defendant Edwards

Similarly, as to Defendant Edwards, the undisputed evidence establishes that he was not deliberately indifferent to Plaintiff's serious medical needs.  Dr. Edwards saw Plaintiff on September 20, 2018 and again on November 27, 2018.  (Doc. No. 37-3 at 2 ¶ 4; Doc. No. 37-4 at 2 ¶¶ 5-6).  At the September 2018 appointment, Edwards did not find any purulent discharge, draining sinus tract, bleeding, swelling that would indicate an active bacterial infection, or that Plaintiff was suffering debilitating pain.  (Doc. No. 37-4 at 2 ¶ 5).  Edwards described his

1    credentials to Plaintiff and offered to extract tooth #9, but Plaintiff refused, filed a grievance, and

2    refused to let any CDCR dentist treat tooth #9.  (*Id*. at 2-3 ¶¶ 6, 8).

3         As part of a November 27, 2018 interview regarding Plaintiff's health care grievance,

4    Defendant Edwards' assessment of Plaintiff's tooth #9 was that it had a chronic apical abscess, a

5    broken endodontic file tip, non-obturated canal, and a poor prognosis.  (Doc. No. 46 at 27).

6    Plaintiff nevertheless continued to refuse extraction of the tooth.  (Doc. No. 37-3 at 2-3 ¶¶ 2, 8).

7         The undisputed facts demonstrate, as with Defendant Young, that Defendant Edwards did

8    not fail to properly examine, counsel, or propose reasonable treatment for Plaintiff's dental needs.

9    Rather, Plaintiff refused dental treatment proposed by the CDCR dentists, treatment which the

10   undisputed facts show was medically appropriate in the circumstances.  (*See* Doc. No. 37-3 at 2-3

11   ¶¶ 2, 4, 8).  As noted above, a difference of medical opinion, is insufficient to state a

12   constitutional claim unless the treatment offered "was medically unacceptable under the

13   circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's]

14   health."  *Jackson*, 90 F.3d at 332.  Here, the unrefuted opinion of multiple dentists is that the

15   proposed extraction of tooth #9 was medically appropriate to prevent further infection of

16   Plaintiff's gums and avoid other serious consequences.  And because Defendants Young and

17   Edwards were competent to diagnose and treat Plaintiff's dental needs, he had no constitutional

18   right to be referred to an outside medical or dental specialist.  Thus, Plaintiff fails to establish a

19   genuine dispute of material fact that Defendant Edwards was not deliberately indifferent to

20   Plaintiff's serious medical condition.

21        **F.  Qualified Immunity**

22        A government official is entitled to qualified immunity under Section 1983 unless (1) the

23   official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his

24   conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 62-63

25   (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S.

26   800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that

27   the statutory or constitutional question was "beyond debate," such that every reasonable official

28   would understand that what he is doing is unlawful.  *Wesby*, 583 U.S. at 63; *Vos v. City of*

1    *Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).

2        This standard is "demanding" and protects "all but the plainly incompetent or those who

3 knowingly violate the law." *Wesby*, 583 U.S. at 63 (citing *Malley v. Briggs*, 475 U.S. 335, 341

4 (1986)). "[A] court typically should identify a case where an officer acting under similar

5 circumstances as [the defendant] was held to have violated the constitutional right at issue." *S.B*

6 *v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)). "Even when no case is 'directly

7 on point,' courts may compare relevant factors to determine whether every reasonable officer

8 should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL

9 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d

10 938, 946-47 (9th Cir. 2017). The plaintiff bears the burden of establishing that the right alleged

11 was clearly established. *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

12        Here, the Court found, as discussed above, that Plaintiff did not satisfy the first prong of

13 the qualified immunity analysis as to either Defendant Young or Edwards because neither

14 committed a violation of Plaintiff's constitutional rights. Thus, the Court need not address the

15 issue of qualified immunity.

16        Even assuming the first prong was met, as to Defendant Young's actions, Plaintiff has not

17 shown the existence of binding authority or a robust consensus of persuasive authority holding

18 that a dentist in a correctional setting is required to refer a Plaintiff for outside medical care when

19 reasonable care is available within the institution. Indeed, as also noted above, Ninth Circuit

20 authority holds that a prison inmate has no independent constitutional right to outside medical

21 care beyond that provided by the prison staff. *Roberts*, 783 F.2d at 870; *King*, 2023 WL 2841073

22 at *2. Because the undisputed facts reflect that CDCR's dental staff was competent to examine,

23 diagnose, and treat Plaintiff's presented dental problems, Plaintiff cannot claim that reasonable

24 dental providers would have believed they were required to refer him to an outside specialist. *See*

25 *Stocker*, 2024 WL 4112299 at *8. It is Plaintiff's burden to establish that such a standard was

26 "clearly established" at the time of the incident, and he provides no argument or citation contrary

27 to the above authority.

28        For the same reason, Defendant Edwards is entitled to qualified immunity, because his

failure to refer Plaintiff to outside medical or dental care did not violate Plaintiff's clearly established right.  Thus, the Court finds that under the undisputed facts in this case Defendants are entitled to qualified immunity on Plaintiff's claim that he should have been referred to an outside dental specialist.

Accordingly, it is **RECOMMENDED**:

1. The district court **GRANT** Defendants Young and Edwards' Motion for Summary Judgment (Doc. No. 37).

2. The district court **DENY** Plaintiff's Motion for Summary Judgment (Doc. No. 46).

3. Judgment be entered in Defendants favor and the case closed.

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    November 20, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE